**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FCC Holdings, Inc., *et al.*,[1] | Case No. 14-11987 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: July 6, 2015 @ 4:00 p.m.**<br>**Hearing Date: July 23, 2015 @ 11:00 a.m.** |

**IRON MOUNTAIN INFORMATION MANAGEMENT, LLC'S**
**REQUEST FOR ALLOWANCE AND IMMEDIATE PAYMENT OF**
**ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. § 503(b)(1)**

Iron Mountain Information Management, LLC ("Iron Mountain"), by and through undersigned counsel, respectfully makes this Request for Allowance and Immediate Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(1) (the "Request") in the amount of $45,903.74 with respect to certain post-petition information and records management services, and in support hereof states as follows:

**Background**

1.  On August 25, 2014 (the "Petition Date"), debtor High-Tech Institute ("High Tech" and together with the other above-captioned debtors and debtors-in-possession, collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.  According to Iron Mountain's books and records, and as summarized on Exhibit A hereto, as of the Petition Date, the Debtors were parties to multiple contracts (the "Contracts")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FCC Holdings, Inc. (2598); Education Training Corporation (1478); High-Tech Institute Holdings, Inc. (4629); EduTech Acquisition Corporation (8490); and High-Tech Institute, Inc. (3099). The Debtors' business address is 1000 Corporate Drive, Suite 500, Fort Lauderdale, FL 33334.

related to Iron Mountain's provision of certain information and records management services. Copies of the Contracts and associated documents are attached hereto as Exhibit B.

3. As set forth on Exhibit A, Iron Mountain is storing approximately 8,300 boxes of hardcopy records (the "Records") on behalf of the Debtors, the Liquidating Trust or their assignees. Iron Mountain is owed $45,903.74 for the post-petition information and records management services provided to the Debtor through May 2015.

4. On September 22, 2014, the Court entered an Order (the "Assumption and Assignment Order") [Docket No. 167] authorizing the assumption and assignment of certain Debtor contracts. Amongst the contracts listed in the Schedule [Docket 167-1] to the Assumption and Assignment Order is an Iron Mountain contract (the "Assumed and Assigned Iron Mountain Contract") dated May 16, 2013 with an effective date of June 1, 2013. Based on the dates ascribed to the Assumed and Assigned Iron Mountain Contract, Iron Mountain believes this contract relates to the J5759 account which contains the vast majority of the Records. See contract appended in Exhibit B at page 1 which bears these dates and also bears a designation tying the contract to account J5759.

5. Although the Schedule to the Assumption and Assignment Order called for a cure payment in the amount of $22,505.64 to be made to Iron Mountain with respect to the Assumed and Assigned Iron Mountain Contract, Iron Mountain has not received the cure payment nor has it received monthly post-petition payments required on the account associated with this contract. Iron Mountain's counsel has contacted the assignee for clarification, payment and assurances of future performance but has not yet received any.

6.	Likewise, Iron Mountain has not received any post-petition payments or any guidance regarding the storage or disposition of the records associated with the other contracts between Iron Mountain and the Debtors that were apparently not assumed and assigned.

7.	On March 18, 2015, the Court entered an Order [Docket No. 464] (the "Confirmation Order") confirming the Debtor's First Amended Joint Plan of Liquidation [Docket No. 373] (the "Plan").  Pursuant to paragraph 12 of the Confirmation Order, "the Liquidating Trustee shall continue to preserve and maintain any documents and electronic data transferred to the Liquidating Trustee."  Pursuant to Section 7.01 of the Plan, the default treatment of executory contracts under the Plan is rejection.

8.	On information and belief, storage and other charges relating to the Records continue to accrue at the rate of approximately $4,000 per month.  In addition, disposition costs in the approximate amount of $60,000 will ultimately need to be paid by the Debtors or their successors in interest to the Records.

9.	At present, no entity is making required payments to Iron Mountain or providing any assurances of future performance with respect to storage and disposition of the records and payment therefor.

10.	Several state agencies or their representatives have contacted Iron Mountain claiming an interest in indeterminate portions of the Records, but none of these third parties have agreed to be responsible for the customer obligations under the Contracts.  Additionally, none of these third parties have agreed to cure the significant arrearages owing on the contracts or to pay the costs associated with segregating and taking possession of some or all of the Records.

11.	Based on all of the foregoing, Iron Mountain lacks sufficient information to determine what amounts are the obligation of the Debtors, the Liquidating Trust, and the

Assignee. Consequently, this request seeks all payment of all post-petition amounts that have accrued under all of the Contracts.

**Argument**

12.     Iron Mountain is entitled to an administrative priority claim based on the storage and shredding services it has provided to the Debtors' estates because the Bankruptcy Code obligates the Debtors to pay for the amounts requested herein. Specifically, section 503(b)(1)(A) of the Bankruptcy Code provides as follows:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving their estate, including wages, salaries, or commission for services rendered after the commencement of the case[.]

13.     A determination of entitlement to an administrative claim is made by examining whether the debt: "(1) arose from a transaction with the debtor-in-possession [or trustee] as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefited the estate." In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976).

14.     Here, all of the charges and expenses, which are the subject of this Request, are the result of services provided by Iron Mountain for the benefit of the Debtors and their estates in accordance with the parties' contracts.

15.     Although some of the Contracts may have been rejected, the Debtors and Liquidating Trust have received, and continue to receive, a post-petition benefit from Iron Mountain's services. In particular, they have been relieved of the burden of storing and protecting approximately 8,400 cubic feet of hardcopy records that various state governments have claimed an interest in. In addition, Iron Mountain has provided periodic post-petition

shredding services, protecting confidential records on behalf of the Debtors and their former employees and students.

16. Against this backdrop, it would be patently unfair to allow the Debtors to continue shirking their contractual payment obligations. Even if the Debtors were to contend now that they no longer need some or all of the Records, such a determination would not retroactively eliminate the benefit conferred upon the Debtors and their estates or relieve the Debtors of their obligation to pay Iron Mountain's administrative expense claim. See, e.g., In re Grand Union Co., 266 B.R. 621, 625-26 (Bankr. D.N.J. 2001) (warehouseman entitled to administrative expense for storage of goods for debtor).

17. Given the ever-growing magnitude of the amounts owing with respect to post-petition storage and shredding services rendered on the remaining accounts (see Exhibit A), the entire arrearage should be paid forthwith. The immediate cure of this significant post-petition arrearage will provide a small measure of assurance that the Debtors will be able to pay their bills timely going forward.

18. Iron Mountain reserves and does not waive any rights at law or equity that it may have against any of the Debtors, the Liquidating Trust or any other affiliates or assignees, person or persons in connection with this motion to compel payment of administrative expenses. Other than as set forth in this motion, no other request for payment of the sums set forth herein has been made against the Debtors or any other person or persons. Iron Mountain further reserves all rights and remedies related to the disposal of the Debtors' records under section 7-209 of the Uniform Commercial Code, or otherwise.

WHEREFORE, Iron Mountain respectfully requests that its claim for post-petition records management services provided to the Debtors in the amount of $45,903.74 be allowed

and immediately paid as an administrative expense pursuant to 11 U.S.C. § 503(b)(1) and that the Court grant Iron Mountain Information Management, LLC such other relief as is just and proper.

Respectfully submitted,

**GELLERT SCALI BUSENKELL & BROWN, LLC**

Dated:  June 19, 2015

By: /s/ Ronald S. Gellert
Ronald S. Gellert (DE 4259)
913 N. Market Street, 10th Floor
Wilmington, DE 19801
Tel. (302) 416-3355
Fax (302) 425-5814
rgellert@gsbblaw.com

- and -

**HACKETT FEINBERG P.C.**
Frank F. McGinn (Mass. BBO # 564729)
155 Federal Street, 9th Floor
Boston, MA 02110
Tel. (617) 422-0200
Fax  (617) 896-6275

*Counsel for Iron Mountain Information Management, LLC*