**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FCC Holdings, Inc., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-11987 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: June 25, 2018 at 4:00 p.m.**<br>**Hearing Date: July 2, 2018 at 11:00 a.m.** |

## LIQUIDATING TRUSTEE'S MOTION TO APPROVE SETTLEMENT

Clingman & Hanger Management Associates, LLC, as liquidating trustee (the "Liquidating Trustee") of the liquidating trust (the "FCC Trust") established by the chapter 11 plan of liquidation [Docket No. 510] (the "Plan") of FCC Holdings, Inc. and its debtor-subsidiaries ("FCC") hereby moves pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving a settlement reached between the Liquidating Trustee and David Knobel, Jeffrey Pierne, Neal Yawn, Dean Bartness, Siana Stewart and Cid Yousefi, as well as three insurers for FCC's Director and Officer Liability Insurance Policies (the "Insurers"), at a May 11, 2018 mediation, the terms of which are attached hereto as Exhibit A (the "Settlement").

### INTRODUCTION

1. The proposed Settlement resolves an action brought by the Liquidating Trustee against six former officers of FCC and pending before the United States District Court for the Southern District of Florida (the "SDFL"). The Liquidating Trustee alleged that these six officers breached their fiduciary duties of care and loyalty through their pre-petition conduct.

---

[1] The debtors (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FCC Holdings, Inc. (6928); Education Training Corporation (1478); High-Tech Institute Holdings, Inc. (4629); EduTech Acquisition Corporation (8490); and High-Tech Institute, Inc. (3099).

The action was scheduled for trial in July 2018.  The proposed Settlement calls for the payment to the Liquidating Trustee of $15 million and releases between the Liquidating Trustee, the Defendants, and the Insurers.

## BACKGROUND

1.    FCC filed a voluntary chapter 11 case on August 26, 2014 (the "Petition Date"). Prior to the Petition Date, FCC operated 41 for-profit schools offering post-secondary education in fourteen states.  FCC received approximately 90% of its revenue in the form of student aid provided via the United States Department of Education (the "DOE").

2.    On March 18, 2015, the Court entered an order confirming FCC's plan of liquidation [Docket No. 464] (the "Confirmation Order").  The Plan became effective on May 6, 2015.  Pursuant to the terms of the Plan, FCC's prepetition claims against its former officers were transferred to the FCC Trust.  Confirmation Order ¶¶ L and 11.

3.    On August 26, 2016, the Liquidating Trustee, on behalf of the FCC Trust, commenced an action (the "Action") in the SDFL against certain former officers of FCC:  David Knobel (the chief executive officer), Jeffrey Pierne (the chief financial officer), Neal Yawn (the chief operating officer), Dean Bartness (the chief compliance officer), Siana Stewart (the Vice President in charge of the Financial Services Office, and Cid Yousefi (the Executive Vice President for Information Technology) (collectively, the "Defendants").  The Trustee alleged that the Defendants breached their fiduciary duties by causing or allowing FCC to overdraw student financial aid funds from the DOE and for failing to monitor FCC's compliance with applicable DOE regulations.  The Liquidating Trustee further alleged that FCC spiraled into bankruptcy after the DOE discovered the overdrawn funds and stripped FCC of its ability to draw federal student aid funds in the ordinary course.

4.      The Defendants moved to dismiss. On April 28, 2017, the SDFL dismissed the Trustee' complaint, without prejudice, on the grounds that the Liquidating Trustee lacked standing to bring the claims of creditors under Delaware law and closed the Action. The Liquidating Trustee moved (the "<u>Motion for Reconsideration</u>") to reopen the Action and for reconsideration of the dismissal order, and, alternatively for leave to file an amended complaint clarifying that the Liquidating Trustee asserted only direct claims of FCC that FCC had transferred to the FCC Trust under the Plan. The Liquidating Trustee also sought leave to include additional facts adduced from discovery (which began in January 2017) in any amended complaint.

5.      On June 27, 2017, the SDFL granted the Trustee's Motion for Reconsideration by reopening the Action and allowing the Liquidating Trustee to file an amended complaint (the "<u>Amended Complaint</u>"). The Amended Complaint alleged that four of the Defendants breached their fiduciary duty of loyalty by knowingly causing FCC to violate DOE cash management regulations and that all of the Defendants breached their fiduciary duty of loyalty by failing to monitor FCC's compliance with applicable DOE regulations (under <u>In re Caremark Int'l Derivative Litig.</u>, 698 A.2d 959 (Del. Ch. 1996)). The Amended Complaint also alleged that all of the Defendants breached their fiduciary duty of care by committing gross negligence in their management of FCC's compliance with DOE regulations.

6.      The Defendants moved to dismiss the Amended Complaint. On January 9, 2018, the SDFL denied Defendants' motion to dismiss ruling that the Amended Complaint stated causes of action for breach of fiduciary under Delaware law.

7.      Discovery continued while both motions to dismiss were pending (although discovery was stayed in the period between the SDFL's dismissal of the Action in April 2017

and reopening of the Action in June 2017).  Fact discovery substantially concluded on January 3, 2018, and expert discovery concluded on February 22, 2018.  During the course of discovery, 20 fact witnesses were deposed, including the Defendants, the Liquidating Trustee, former employees of FCC, as well as other third-parties, including the DOE.  The Liquidating Trustee hired three experts and the Defendants hired two experts.  The Liquidating Trustee's experts included (a) an accounting expert to opine on the valuation of FCC but for the fiduciary breaches and a forensic reconstruction of the student aid funds drawn from the DOE, (b) a financial aid process expert to opine on industry norms for compliance with DOE cash management regulations, and (c) a Title IV expert to opine on applicability of the DOE regulations to the conduct at FCC.  Defendants hired rebuttal experts to critique the Liquidating Trustee's experts and to opine that FCC's actions were compliant with DOE regulations.

8. The Liquidating Trustee's accounting expert provided a damages valuation range between $33 and $47 million using a market approach, although he acknowledged that using a discounted cash flow approach would yield a damages valuation range of $23 to $25 million.

9. On March 9, 2018, the Defendants filed five motions:  (a) a motion for summary judgment, (b) a motion claiming that relevant documents had been spoliated, (c) a motion to exclude the Liquidating Trustee's accounting expert, (d) a motion to exclude the Liquidating Trustee's financial aid expert, and (e) a motion to exclude the Liquidating Trustee's Title IV expert.

10. On May 8, 2018, the SDFL ruled on the expert exclusion motions:  The SDFL denied the motion to exclude the Liquidating Trustee's accounting expert, but granted the motion to exclude the Liquidating Trustee's Title IV expert.  The SDFL ruled that the Liquidating Trustee's financial aid expert could testify at trial but only as to industry norms.

11. Pursuant to the SDFL's scheduling orders, the calendar for pre-trial submissions began on May 7, 2018 and continued through July 3, 2018. The calendar included specific dates for in limine motions, deposition designations, including designation objections and counter-designations, exhibit lists for both sides, including, all evidentiary objections, the pre-trial stipulation, jury instructions, voir dire and several pre-trial conferences. In accordance with those orders, both sides submitted in limine motions on May 7, 2018.

12. Trial by jury was scheduled to commence in this action on July 9, 2018.

13. The parties held two formal mediations attempting to consensually resolve the Action with two different JAMS mediators. The first, held in December 2017, was unsuccessful. The second mediation, held on Friday, May 11, 2018 before Jed Melnick, Esq. of JAMS (the "Mediator"), was successful in resolving the dispute and resulted in the Settlement.

14. The May 11th mediation was attended by representatives for the Liquidating Trustee, the Defendants and the Insurers. On Friday, May 11, 2018 at 8:39 p.m., the Mediator's assistant emailed the terms of the agreed Settlement to the Liquidating Trustee, the Defendants and the Insurers:

> a) The Parties agree to an all-in settlement amount of $15,000,000 (the "Settlement Payment"), which the insurers shall fund in a commercially reasonable time period.
>
> b) Defense counsel agrees to confirm details of this settlement with the Trustee's counsel via email as early as possible this Sunday, May 13, 2018.
>
> c) The Parties will jointly prepare a communication to go to the [SDFL] on Monday, May 14, 2018.
>
> d) The Parties agree that this settlement is subject to Bankruptcy Court approval.
>
> e) The Parties agree to global, mutual releases (including, but not limited to, releases of all insureds under the policies, all claims in the bankruptcy are to be released, policy and claims releases for each insurer, etc.).

      f)      The Parties agree that Jed Melnick shall retain jurisdiction and arbitral power over any settlement-related issues arising between any of the Parties.

*Id*. By emails dated May 11 through May 14, 2018, all the parties emailed back to confirm their agreement with these terms. (*see* confirming emails attached hereto as Exhibit B).

15.    On May 14, 2018, the parties notified the SDFL of the Settlement and sought a continuance of all trial dates. On May 15, 2018, the SDFL ruled that the case would be administratively closed pending approval of the Settlement by the Bankruptcy Court. The SDFL ordered the parties to report on the approval or disapproval of the Settlement within ten days of the Bankruptcy Court's ruling.

**PENDING MOTIONS TO BE DECIDED AND ISSUES TO BE TRIED IN THE ACTION**

16.    At the time of the Settlement, the following motions remained *sub judice* in the Action: (1) Defendants' motion for summary judgment, (2) Defendants' motion regarding spoliation, (3) Defendants' motions in limine to preclude the Liquidating Trustee from proffering certain evidence at trial, and (4) the Liquidating Trustee's motions in limine.

17.    Were the Liquidating Trustee to prevail on those motions, the following factual disputes remained to be resolved at trial by the jury:

- Defendants' contention that all of their actions comported with DOE regulations;

- Defendants' contention that their actions otherwise fell within the wide discretion that Delaware law provides to corporate fiduciaries under the business judgment rule;

- Defendants' contention the Liquidating Trustee could not prove the level of scienter required to establish that the Defendants knowingly violated DOE regulations or consciously disregarded violations of the same;

- Defendants' contention that defendants Stewart and Yousefi were not "key managerial personnel" who owed fiduciary duties to FCC under Delaware law;

6

- Defendants' contention that defendant Bartness had no responsibility for Title IV compliance;

- Defendants' contention that the Liquidating Trustee could not prove causation, in so far, as Defendants claimed numerous intervening factors also caused FCC to file for bankruptcy, such as the downturn in the for-profit education business and the decision by FCC's board of directors to shutter the company and sell off its assets; and

- Defendants' contention that even if the Liquidating Trustee could prove liability and causation, that the Trustee could not establish damages.

18. Suffice it to say, almost every issue in the case was contested and all would be tried before a lay jury.

## ARGUMENT

### A. Summary of the Terms of the Settlement

19. The Liquidating Trustee believes that the Settlement should be approved as fair and reasonable. Absent approval of the Settlement, the Liquidating Trustee would be forced to litigate the Action to trial, incurring significant expenses, depleting the directors and officers insurance policies backstopping the Defendants' liability, and running the risk of recovering nothing before a jury.

20. Prior to the Petition Date, FCC purchased approximately $25 million in directors and officers insurance. The policies were depleting policies such that any dollar spent on the Defendants' legal defense costs reduced the amount available to satisfy a judgment in the Liquidating Trustee's favor. At the time of the Settlement, the Liquidating Trustee understands the policies to have been reduced to approximately $21 million. Other than the available funds remaining on the policies, the Liquidating Trustee believes five of the six defendants to have limited assets. While the Liquidating Trustee believes one of the Defendants to have substantial assets, the Liquidating Trustee believes that accessing such assets would require significant judgment collection litigation in the event that the Liquidating Trustee obtained a judgment

against that Defendant. The Liquidating Trustee also understands that certain Insurers raised coverage defense issues such that even if the Liquidating Trustee prevailed at trial, the Insurers might not pay to satisfy the resulting judgment.

21. Pursuant to the Settlement, the Insurers will pay $15 million, in exchange for global mutual releases between the Liquidating Trustee, the Insurers and the Defendants, plus all insureds under the policies. (*See* Ex. A, Settlement ¶5). The Defendants and the Insurers required such releases as a condition to the Settlement and the Liquidating Trustee is aware of no material affirmative claims other than the claims already asserted against the Defendants in the Amended Complaint. The Settlement provides that the Defendants' release includes the release of all bankruptcy asserted by the Defendants against FCC. (*Id.*) This waiver will result in a waiver Defendants' priority and general unsecured claims against FCC's estate that collectively total $25,040 and $669,691, respectively.

## B. Legal Standards for Approval of the Settlement

22. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'" (quoting *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).

23. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved: "(1) the probability of

success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

24. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the trustee. *See In re Neshaminy Office Bldg. Assoc.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

C. **The Settlement Should Be Approved**

25. Each of the *Martin* factors weighs in favor of approval of the Settlement. *Martin*, 91 F.3d at 393. The Liquidating Trustee believes that the Settlement reflect compromises of disputes that are fair in light of the circumstances. They were reached after two formal mediations before two separate professionals mediators.

26. The Settlement will allow the Liquidating Trustee to recover more than 70% of the remaining policy proceeds without incurring any further litigation expenses and without

risking further depletion of the policies by Defendants' counsel. In addition to a motion for summary judgment, Defendants had multiple pending motions to exclude the bulk of the Liquidating Trustee's evidence at trial. In the event the Liquidating Trustee prevailed on all those motions, the Liquidating Trustee would still be required to persuade a lay jury that the Defendants knowingly, recklessly, or negligently caused FCC to violate complicated DOE regulations.

27. Moreover, should the Liquidating Trustee have prevailed at trial – and in the full amount the Liquidating Trustee was seeking – there is no guarantee that the Liquidating Trustee would recover more funds than the Settlement provides. As discussed above, the Insurers raised coverage defenses to satisfying a judgment on the Liquidating Trustee's claims. Moreover, recovering more than the available funds remaining under the policies after a full jury trial, would require the Liquidating Trustee to engage in uncertain judgment collection litigation against individual Defendants. In other words, a judgment in a higher amount would only be the first step in substantial judgment collection litigation, not to mention appeals.

28. Approval of the Settlement will allow the Liquidating Trustee to fund an orderly wind down of the cases pursuant to the Plan and to provide the creditors of the estate with a meaningful recovery. Accordingly, the Liquidating Trustee respectfully requests that the Court enter an order substantially in the form annexed hereto approving the Settlement.

WHEREFORE, the Liquidating Trustee respectfully requests that this Court enter an order, substantially in the form annexed hereto, approving the Settlement and granting such further relief as may be just and proper.

Dated: June 11, 2018　　　　　　　　**WOMBLE BOND DICKINSON (US) LLP**
　　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　　　　By: */s/ Ericka F. Johnson*
　　　　　　　　　　　　　　　　　　Matthew P. Ward (Del. Bar No. 4471)
　　　　　　　　　　　　　　　　　　Ericka F. Johnson (Del. Bar No. 5024)
　　　　　　　　　　　　　　　　　　222 Delaware Avenue, Suite 1501
　　　　　　　　　　　　　　　　　　Wilmington, DE  19801
　　　　　　　　　　　　　　　　　　Telephone: (302) 252-4320
　　　　　　　　　　　　　　　　　　Facsimile: (302) 252-4330
　　　　　　　　　　　　　　　　　　E-mail: matthew.ward@wbd-us.com
　　　　　　　　　　　　　　　　　　E-mail: ericka.johnson@wbd-us.com

　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　**STORCH AMINI PC**
　　　　　　　　　　　　　　　　　　Bijan Amini, Esq.
　　　　　　　　　　　　　　　　　　Avery Samet, Esq.
　　　　　　　　　　　　　　　　　　2 Grand Central Tower, 25th Floor
　　　　　　　　　　　　　　　　　　140 East 45th Street
　　　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　　　Telephone:  (212) 490-4100
　　　　　　　　　　　　　　　　　　Facsimile: (212) 490-4208
　　　　　　　　　　　　　　　　　　E-mail: bamini@storchamini.com
　　　　　　　　　　　　　　　　　　E-mail: asamet@storchamini.com

　　　　　　　　　　　　　　　　　　Counsel to the Liquidating Trustee